UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------x
                                                      :
UNITED STATES OF AMERICA       :
                                                      :          3:11-MC-32 (JBA)
v.                                                     :
                                                      :
GRAMERCY ADVISORS               :
                                                      :          APRIL 28, 2011
---------------------------------------------------------x

## RULING ON UNITED STATES' MOTION TO COMPEL

On March 7, 2011, the United States of America filed the pending Motion to Compel the Production of Documents by Gramercy Advisors ["Gramercy"], arising out of two cases pending in the United States District Court for the Central District of Illinois -- <u>Uviado, LLC through Shahid R. Khan v. United States of America</u>, Civil No. 2:10-cv-2177 (C.D. IL - Urbana Division)["<u>Uviado</u>"] and <u>Leman LLC, through Jonction, LLC v. United States of America</u>, Civil No. 2:10-cv-02178 (C.D. IL - Urbana Division)["<u>Leman</u>"]. (Dkt. #1).[1] Twenty-one days later, Gramercy filed its brief in opposition (Dkt. #4),[2] and on April 6, 2011, the United States filed

---

[1] Attached to Dkt. #1 are the following exhibits: Declaration of Jonathan Blackers, sworn to March 4, 2011; copy of correspondence, dated December 2, 2009, attached to which are two subpoenas to Gramercy Advisors, dated December 2, 2009 (Exh. A); copy of excerpts of transcripts of videotaped deposition of J. Robert Young, taken on November 15 and 16, 2008 (Exh. B); copy of e-mail and letter correspondence, dated November 18, 2010 (Exh. C); copy of e-mail correspondence, dated December 10, 2010 (Exh. D); copy of e-mail correspondence, dated January 5, 2011 (Exh. E); copy of e-mail correspondence, dated February 11, 2011 (Exh. F); copy of e-mail correspondence, dated February 11 and 15, 2011 (Exh. G); and copy of e-mail correspondence, dated February 11, 15, and 16, 2011 (Exh. H).

The United States contends that <u>Uviado</u> involves a tax shelter from the 2002 tax year, <u>Leman</u> involves a tax shelter from the 2003 tax year, and both transactions were conducted for the taxpayer, Shahid Khan, by Gramercy. (Dkt. #1, at 1). According to the United States, Khan avoided paying approximately $50 million in taxes owed for the 2002 and 2003 tax years. (<u>Id.</u>).

[2] Attached to Dkt. #4 are the following exhibits: Declaration of Jonathan R. Altschuler, sworn to March 28, 2011 (Exh. A); correspondence, dated March 10, 2011, attached to which is a copy of a standard standing protective order (Exh. B); correspondence, dated March 10, 2011 (Exh. C); copy of a standard standing protective order (Exh. D); and copies of case law (Exhs. E-F).

its reply brief. (Dkt. #5). On April 14, 2011, Gramercy filed its Motion for Leave to file a sur-reply brief (Dkt. #6),[3] in response to which, the United States sought the right to reply to Gramercy's sur-reply. (Dkt. #7).[4] On March 8, 2011, United States District Judge Janet Bond Arterton referred the pending motion to this Magistrate Judge. (Dkt. #2).

## I. FACTUAL BACKGROUND

On December 2, 2009, the United States served two subpoenas on Gramercy in connection with the Uviado and Leman tax shelter cases, and on March 1, 2010, the Government received responses to the subpoenas, including production of certain documents. (Dkt. #1, at 1-2 & Exh. A; see Dkt. #4, Exh. A ¶ 3). On November 15 and 16, 2010, the United States deposed J. Robert Young, a corporate representative of Gramercy, in connection with the Uviado and Leman cases. (Dkt. #1, Exh. B). During his deposition, Young was confronted with a Gramercy document that had not been provided to the United States by Gramercy in response to the two subpoenas. (Dkt. #1, Exh. B, at 547-49). The United States subsequently claimed that Gramercy failed to produce all documents responsive to the two subpoenas. (Dkt. #1, at 2; Dkt. #1, Exh. B, at 551).[5]

---

[3]Attached as Exh. A is the Sur-reply in Opposition to United States' Motion to Compel Discovery, and attached as Exh. 1 is additional excerpts from the Young deposition. Gramercy's Motion for Leave to File (Dkt. #6) is granted.

[4]Attached as Exh. 1 is the Government's Reply to Gramercy's Sur-reply; attached to Exh. 1 is a copy of a fax, dated December 13, 2002, with a chart in which the investors' names have been redacted (Exh. J). The United States' Motion for Leave to File (Dkt. #7) is granted.

[5]On November 18 and December 10, 2010, counsel for the United States Government contacted Gramercy's counsel to request documents containing information relating to Khan, Uviado, and Leman that the United States claims were not produced in response to the two Gramercy subpoenas. (Dkt. #1, Exhs. C-D). The United States gave Gramercy thirty days in which to respond. (Dkt. #1, Exh. C). On December 23, 2010, counsel for the United States followed up through a telephone conversation with Gramercy's counsel, during which the Government was told that it would receive additional documents following review by Gramercy's counsel. (Dkt. #1, at 2). On January 5 and February 11, 2011, the United States e-mailed Gramercy's counsel to follow-up on the request (Dkt. #1, Exhs. E-F), in response to which, on February 15, 2011, Gramercy's

On March 7, 2011, the United States moved to compel the production of these documents, in which motion the United States contends that Gramercy has failed to produce responsive documents after its repeated requests; a confidentiality agreement was not required for the prior production; and if Gramercy seeks to overcome the presumption of public access to judicial records and documents, Gramercy must specifically show that the documents contain the type of information courts protect and that disclosure of this information would cause Gramercy a clear and serious injury. (Dkt. #1, at 3-4). In response, Gramercy contends that it will produce more than 1300 pages responsive to the United States' supplemental request after negotiating a protective order or, in the alternative, immediately pursuant to this Court's Standing Protective Order;[6] the commercial information regarding Gramercy's investors should be protected by a protective order because as a private hedge fund, Gramercy requires the confidence of its investors; the Government's refusal to enter into a negotiated confidentiality agreement or follow this Court's Standing Protective Order is unreasonable; and this Court's Standing Protective Order applies to actions in this court, including Gramercy's production. (Dkt. #4, at 4-7).

In its reply brief, the United States reasserts that it is seeking the production of the 1300 pages of admittedly relevant and withheld documents without the pre-condition of a

---

counsel requested a confidentiality agreement between the Government and Gramercy before Gramercy would produce the documents. (Dkt. #1, Exh. G; Dkt. #4, at 3-4). Gramercy claimed that this was not the first time that it requested a confidentiality agreement. (Dkt. #4, Exh. A, ¶¶ 3-5). On February 16, 2011, the Government replied to Gramercy's counsel by e-mail, requesting "more detail as to <u>specifically</u> what it is Gramercy is seeking to protect and keep confidential so that [it] can make a determination as to whether this situation requires a confidentiality order." (Dkt. #1, Exh. H)(emphasis in original). In this e-mail, the Government also requested a draft of the proposed confidentiality order from Gramercy's counsel. (<u>Id.</u>).

[6]The Standing Protective Order to which Gramercy refers is the draft order available on the Court's website; this order has not entered in this case.

protective order; Gramercy fails to explain how the documents are "proprietary" or are "trade secrets," but instead relies on a vague need to protect "investors," while failing to establish a legitimate harm to these "investors" that outweighs the Government's interests; these "investors" are others who used the same tax shelter at issue in the Uviado and Leman; and the Government should not be restricted from using the 1300-plus pages produced to verify the completeness of Gramercy's production in other cases. (Dkt. #5, at 1-3, 5).

In Gramercy's sur-reply, it reiterates that it is willing to produce the additional documents, and it requests that those documents be subject to the Standing Protective Order or that the Court permit Gramercy to redact names and identifying information of any other third party investors from the documents. (Dkt. #6, Exh. A). The United States responds that its "goal is not to publicize [the] names" in the responsive documents, but rather, it needs to "be able to cross-check Gramercy's compliance with document subpoenas that may be issued to it in other cases involving other tax shelter clients." (Dkt. #7, Exh. 1).

## I. DISCUSSION

Pursuant to Rule 45(c) of the Federal Rules of Civil Procedure, "the serving party may move the issuing court for an order compelling production," and this production "may be required only as directed in the order." FED. R. CIV. R. 45(c)(2)(B)(i)-(ii). Since this Court issued the two subpoenas on Gramercy as they relate to the Uviado and Leman actions, this Court has the power to compel production of the responsive documents. (Dkt. #1, Exh. A; see FED. R. CIV. R. 45(c)(2)(B)(i)).

As stated above, it is undisputed that Gramercy has more than 1300 documents responsive to the Government's subpoenas (Dkt. #4, at 4-5 & Exh. A, ¶¶ 11-12 & Exh. B), and that Gramercy is willing to produce additional documents to the Government. (Dkt. #6,

4

Exh. A, at 1). However, Gramercy seeks to have a protective order enter or to have the names of third party investors redacted from the documents produced.

"A court is given broad discretion regarding whether to issue a protective order." Wells Fargo Bank, N.A. v. Konover, No. 3:05 CV 1924 (CFD)(WIG), 2009 WL 585434, at *4 (D. Conn. Mar. 4, 2009)(citing Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir.1992))[7]. Under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, for good cause shown, a court may "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ." FED. R. CIV. P. 26(c)(1)(G). "Good cause is established by demonstrating a clearly defined and serious injury resulting from disclosure. . . . Broad allegations of harm will not establish good cause, rather to establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Hanson v. U.S. Airports Air Cargo, LLC, No. 3:07 CV 353(JCH), 2008 WL 4426909, at *1 (D. Conn. Sept, 26, 2008) (quotation marks, alterations & citations omitted). See also Uniroyal Chemical Co. Inc. v. Syngenta Crop Protection, 224 F.R.D. 53, 56 (D. Conn. 2004)("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.")(citation omitted).

The language of the Standing Protective Order that Gramercy seeks to have entered in this case provides that confidential information disclosed "will be held and used by the

---

[7]The cases upon which the Government relies are inapposite as this case does not involve a request that the judicial record be sealed. See Virginia Dept. of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004)(discussing First Amendment right of access to judicial records), cert. denied, 544 U.S. 949 (2005); Miller v. Indiana Hosp., 16 F.3d 549, 551 (3d Cir. 1994)("This Court has made clear that our 'strong presumption' of openness does not permit the routine closing of judicial records to the public.")(citation omitted). See also U.S. v. Graham, 257 F.3d 143, 149 (2d Cir. 2001)(discussing common law right to inspect and copy judicial records in the context of a criminal matter).

person receiving such information solely for use in connection with the action, in which the Order is issued." (See Dkt. #4, Exh. D & note 6 supra). The current action is a miscellaneous action commenced for the purpose of compelling production of documents that are the subject of a subpoena issued out of the U.S. District Court for the District of Connecticut. The underlying action for which these documents are sought is an action in which Gramercy is not a party and which is pending in the United States District Court for the Central District of Illinois. Thus, the Standing Protective Order of this Court will not satisfy the needs of both parties in this matter while the case is being litigated in another district.[8]

The foregoing notwithstanding, the record before the Court consists only of the Gramercy's conclusory assertions that "commercial information pertaining to Gramercy's investors warrants such basic protection[, as] Gramercy's ability to operate as a private hedge fund requires the confidence of its investors and prospective investors, and confidentiality is a fundamental tenet of that confidence." (Dkt. #4, at 5 (citation omitted); see Dkt. #6, Exh. A at 3). Gramercy has not provided a privilege log, nor has it provided the Court with a detailed explanation of the subject matter of the documents withheld and why they are entitled to protection. Rather, Gramercy contends that as "a private hedge fund, [its] business would be irreparably harmed if prospective investors were to lose confidence regarding the confidential nature of their investments." (Dkt. #6, Exh. A at 3). However, as the United States contends, the "transaction the United States is requesting documents for is not an 'investment' but an elaborate scheme to claim artificial tax losses for the sole purpose of avoiding large tax liabilities owed by its clients." (Dkt. #5, at 2-3).

---

[8]Further, pursuant to the language of the Standing Protective Order, the United States has made clear in this matter that it "challenges another party's confidential designation," thus, as a "challenging party[,]" the United States would "thereafter seek resolution by this Court," thereby bringing this issue back to this Court. (Dkt. #4, Exh. D & note 6 supra).

6

The United States concedes that its previous agreement during the Young deposition to redact names of other Gramercy clients established that its goal is not to publicize those names, but the names are necessary for the United States to be "able to cross-check Gramercy's compliance with document subpoenas that may be issued to it in other cases involving its other tax shelter clients." (Dkt. #7, Exh. 1, ¶ 5 & Exh. J). In the absence of more than a conclusory assertion of confidentiality, Gramercy has not satisfied its burden of establishing that the documents should be redacted prior to production to the United States. Accordingly, **on or before May 20, 2011**, Gramercy shall supplement its production with the approximately 1300 additional pages of potentially responsive material to the Government.[9]

## II. CONCLUSION

For the reasons stated below, the United States Motion to Compel (Dkt. #1) is granted.

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District

---

[9]If the United States and Gramercy are able to work out a mechanism by which they can satisfy both their goals – that is, Gramercy's desire to protect the names of its investors and the United States' ability to cross-check Gramercy's compliance with document subpoenas in other cases with tax shelter clients – by using an investor's three initials, street address, or the last four digits of his or her Social Security number (or any other code), they are obviously free to do so.

of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit)**; Caidor v. Onondaga County, 517 F.3d 601, 604-05 (2d Cir. 2008)**(failure to file timely objection to Magistrate Judge's discovery ruling <u>will</u> preclude further appeal to Second Circuit)**.

Dated at New Haven, Connecticut, this 28th day of April, 2011.

/s/ Joan G. Margolis USMJ
Joan Glazer Margolis
United States Magistrate Judge
